## COMMONWEALTH *vs.* WILLIAM H. RYAN.

Worcester.    September 29, 1890. — October 23, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Intoxicating Liquors — Common Nuisance — Social Club.*

Different offences, founded upon the same facts and of the same general nature and punishable in the same way, may be joined in one indictment without the averment required by the Pub. Sts. c. 213, § 18, that the different counts are descriptions of the same acts.

At the trial of an indictment against the "steward" of an incorporated social club for keeping and maintaining a common nuisance, there was evidence that a large quantity of intoxicating liquors and bottles was found at different times

in the rooms of the club, together with the utensils, fixtures, and other articles commonly used in bar-rooms; that keys for lockers therein, containing liquors in bottles marked with the names of "members," were in a drawer in the defendant's control, a few of the keys opening all of the lockers; that many men were found drinking there, one from a bottle marked with the name of an absent person, and a second who had been seen at another club within half an hour; that the defendant tried to hold the door when two police officers sought to enter, and answered evasively when asked who had charge of the place; and that when arrested, the defendant, after saying, "I cannot go, — I am running this place, and I can't let these men stay, — if I go, the men will help themselves to the liquor," turned down the gas, ordered the men to leave, came out of the rooms, and locked the door, putting the key in his pocket. *Held,* that the evidence was sufficient to warrant the jury in finding that the club was a mere device to cover the sale of intoxicating liquors, and that it could not be said, as matter of law, that there was no evidence to warrant a conviction.

INDICTMENT in two counts, the first alleging that the defendant, at Worcester, "did assist in keeping and maintaining a certain tenement and place there situate then and at the times aforesaid, and there used by the Pelican Club for the purpose of illegal selling, distributing, and disposing of intoxicating liquors," from May 2, 1890, to August 11, 1890; and the second, that the defendant, at the same time and place, did keep and maintain a common nuisance, to wit, a tenement used for the illegal sale and illegal keeping for sale of intoxicating liquors.

In the Superior Court, before the jury were impanelled, the defendant moved to quash the indictment, on the ground that two counts, describing different offences depending on the same facts were set forth therein, and that the indictment did not contain an averment that the different counts were descriptions of the same act. *Dunbar,* J. overruled the motion; and the defendant excepted.

At the trial, certain police officers of the city of Worcester testified on behalf of the government, in substance as follows.

The rooms of the Pelican Club were in a building numbered 98 Front Street, in that city. On the afternoon of August 2, 1890, the officers knocked at the door of the front room, and the defendant admitted them. The room was fifteen by eighteen feet, and contained five or six small tables, eighteen chairs, a small writing-desk, a few pictures on the walls, a piano, and four books. There were seven men sitting at tables, four or five of them drinking beer. There was no beer in the rooms except what the men were drinking. In the rear of this

room was a small room with a large refrigerator, six feet high by four feet broad, with nothing in it but ice. On another side of the room were twenty-five small closets, or lockers, about fifteen inches deep, the doors of which were twelve or fourteen inches square. There were a sideboard and a table on which were twenty tumblers, twenty-four beer glasses, twelve small whiskey glasses, a sugar-bowl with sugar shaker, lemons, corkscrew, and under the table were a large tub to wash glasses in, and two pails, one partially filled with water, and in it some lemon peel and slices of lemon. The defendant was asked who had charge of the place, but made no reply. Upon being asked a second time, he replied that he did not know as he ought to tell. The defendant was then asked, "Do you run it?" and he answered, "I suppose I do, I stay here." The defendant unlocked the drawers in the sideboard in which were the keys for the lockers; one key unlocked several lockers, and a few opened all the lockers. A few had something in them; none had anything except liquor; there were whiskey, gin, beer, and empty bottles. Many of the lockers had nothing in them. One Cronin, who was present at the time, had been seen by one of the officers at another club within half an hour.

On August 5, 1890, the officers again visited the rooms ; Ryan was there and in charge. They found in the back room two large sugar barrels, containing three or four hundred empty lager beer bottles, near the door; also beer and whiskey in the refrigerator; the beer was in bottles, and there were names on the bottles.

On August 8, 1890, the rooms were again visited, and the defendant was there and a large number of people. The defendant met the officers at the door, and tried to hold it. There were two barrels of lager beer bottles, one full of empty bottles, the other with fifteen or twenty empty bottles, and the others full of beer. Six men were in the rooms drinking, with lager beer in glasses in front of them, and only one of them had a bottle. One of them, named Holden, had a bottle in front of him marked Conlin, who was not in the room. The defendant was seen to take the bottles and glasses away, and put empty bottles into a barrel. In the refrigerator were forty bottles of lager beer. During the evening of the same day, ten

men were found sitting at the table; one barrel of empty bottles was gone, and the other then had about one hundred bottles in it. There were about ninety bottles of lager beer then on ice. The officer who arrested the defendant at the rooms found him in a room with thirteen men besides himself sitting at tables, and rapped four different times at the door before he got in. When told that the officer had come to arrest him, the defendant said, " I cannot go, — I am running this place, and I can't let these men stay, — if I go, the men will help themselves to the liquor." He then turned down the gas, ordered the men to leave, put on his coat and hat, and came out. He locked the door, on which were two locks, one of them a spring lock, and put the key in his pocket.

The certificate of membership of the club which was introduced in evidence was dated June 25, 1890, and showed that the Pelican Social Club was duly incorporated under the Pub. Sts. c. 115, § 2. The defendant testified that he went to work for the Pelican Social Club about four weeks before; that he was hired by the treasurer of the club, and was to receive nine dollars a week; that each locker had upon it the name of a member of the club; that, if a member wished to obtain liquor, he wrote an order directed to a wholesale liquor dealer in East Brookfield to deliver to such member at the rooms of the Pelican Social Club the liquor ordered; that the liquors were sent by express to the rooms of the club; that he put the liquors into the lockers, that is, each man's goods into his own locker, or into the refrigerator; that when the member came to the rooms and asked for his liquor, either he brought it and put it on a table, or the member went himself to his own locker and took it out; that he received no money for the liquors; that he never took one man's liquors from a locker and gave them to another man; that the only money he handled he received from the sale of cigars, and passed it over to the treasurer; that the lemons and sugar were the property of the club, and paid for by the club; that all the property in the rooms of the club belonged to it, and he had no interest in it; that he was not a member of the club, but was hired merely as steward of the club; that the members of the club paid the treasurer for liquors, who settled with the wholesale dealer; and that the dealer labelled

all the liquors sent by him.    The president of the Pelican Social Club testified that it numbered one hundred and thirty-five or one hundred and forty members.

The defendant asked the judge to rule that the evidence would not warrant a verdict of guilty on the second count.    The court refused so to rule, and directed a verdict of not guilty on the first count, by reason of a variance.    The jury returned a verdict of guilty on the second count; and the defendant alleged exceptions.

*J. Hopkins & J. E. Sullivan,* for the defendant.

*A. J. Waterman,* Attorney General, *& H. A. Wyman,* Second Assistant Attorney General, for the Commonwealth.

KNOWLTON, J.    For the reasons stated in *Commonwealth* v. *Jacobs, ante,* 276, the motion to quash was rightly overruled.

There was evidence from which the jury might have inferred that the organization of a club, the construction of lockers, and the marking of names on bottles was a mere device to cover the unlicensed sale of intoxicating liquors.    The evidence that a large quantity of lager beer, of bottles, and of liquors was found there at different times, together with the utensils, fixtures, and other articles which are commonly used in bar-rooms, that Holden was drinking from a bottle marked with the name of Conlin when Conlin was not present, that the keys for the lockers were in a drawer in the defendant's control, and that a few of the keys opened all the lockers, that many men were found drinking there, that Cronin, who was there, had been seen at another club within half an hour, that the defendant tried to hold the door on one occasion when the officers came there, and at first made evasive answers to the question who had charge of the place, that at another time he said to an officer, " I cannot go, — I am running this place, and I can't let these men stay, — if I go, the men will help themselves to the liquor," — and that he then turned down the gas, ordered the men to leave, came out, locked the door, and put the key in his pocket, — was all to be considered with other matters in connection with the defendant's testimony in determining whether his statement should be believed.    The court could not say, as matter of law, that there was no evidence to warrant a conviction.

*Exceptions overruled.*